# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| WILLIE CLINTON LOVETT, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CV417-236 |
| | ) | CR414-143 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

After Willie Lovett was convicted for his role in "an illegal and swindling gambling operation" while serving as the chief of the Savannah-Chatham Metropolitan Police Department, *United States v. Lovett*, 662 F. App'x 838, 840 (11th Cir. 2016), this Court sentenced him to 90 months' imprisonment.  Doc. 193.[1]  He appealed, arguing that the Government did not present evidence sufficient for the jury to find him guilty, the Government impermissibly struck five African-American potential jurors from the jury pool, and the Court improperly applied a six-level enhancement.  *Lovett*, 662 F. App'x at 840.

---

[1]  The Court is citing to the criminal docket in CR414-143 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

The Court of Appeals affirmed his sentence, concluding that Lovett had failed to make a *prima facie* case, under *Batson v. Kentucky*, 476 U.S. 79 (1986), that the Government struck those jurors solely on the basis of their race. *Id.* at 847-48. The Court also "easily conclude[d] that the government produced enough evidence" to support the jury's verdict, *id.* at 851, and that the district court had not erred in evaluating the witness evidence on payments Lovett accepted and applying the sentencing enhancement under U.S.S.G. § 2C1.1(b)(2) (enhancement triggered by payments exceeding $5,000). He now seeks to vacate his sentence, contending that the Court erred in applying that six-level sentencing enhancement and ordering that he participate in the Inmate Financial Responsibility Program. Doc. 151. He further countends that his counsel deficiently argued his *Batson* claim both at trial and on appeal. *Id.*

# I.   ANALYSIS

## A.   The Procedurally Barred Claims

As set forth in this Court's screening Order:

Lovett . . . again argues that the Court incorrectly applied a six-level sentencing enhancement ([doc. 251] at 20-28), an argument already introduced and rejected on appeal. *See Lovett*, 662 F. App'x 838. He cannot raise it again in this Court in a § 2255 motion.

*Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) ("It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal."); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994) ("[P]rior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding."); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("This Court is not required on § 2255 motions to reconsider claims of error raised and disposed of on direct appeal.").

> FN 1.  Lovett further contends that the 2015 amendment to the Sentencing Guidelines provides grounds to unwind his sentence.   Doc. 251 at 26-28.   He contends that the enhancement applied pursuant to U.S.S.G. § 2C1.1(b)(2) is somehow "abrogate[d]" by unidentified "changes" made by the amendment. Doc. 251 at 26.  It is unclear, however, how the amendment to § 2C1.1 in November 2015 changes anything.   Pursuant to U.S.S.G. § 1B1.11, the Guideline Manual in effect at the time a defendant is sentenced is to be used in determining the applicable sentencing guideline range.  The 2014 Guidelines Manual was thus properly used in determining Lovett's sentencing guideline range at his February 2015 sentencing.  The later amendment, which is *not* retroactive, does nothing for him.  *See United States v. Conley*, __ F. Supp. 3d __, 2017 WL 5953153 at n. 6 (E.D. Ken. Dec. 1, 2017).

Doc. 252 at 2-3.  Lovett objects that the Court "distort[ed]" the grounds set forth in his motion, and he filed an amended motion to elucidate his § 2255 challenges.   His motion to amend (doc. 254) is **GRANTED** as

unopposed, but it offers him no further relief, as he only affirms that these challenges are procedurally barred.

Lovett amends his motion to contend that "exceptional circumstances" warrant allowing him to reintroduce his challenge to the six-level enhancement.   Doc. 254 at 3-4.   He notes that the Court of Appeals' opinion was issued *per curiam* and argues that such an opinion "persists as the most controversial form of summary disposition[,] with the petitioner given no opportunity to file additional briefs on the merits or to argue the decision orally before the court."   *Id.* at 4 (quoting "Black's Dic., 10th Ed. at 1266").   He, however, mistakes a listed example for the dictionary definition.

A *per curiam* opinion is merely one "handed down by an appellate court without identifying the individual judge who wrote the opinion." OPINION, *Black's Law Dictionary* (10th ed. 2014).   The section Lovett misquotes actually describes a specific type of *per curiam* opinion issued by the Supreme Court in simultaneously granting *certiorari* and disposing of the merits, such that the parties do not get their chance at oral argument before the highest court.   *Id.* (quoting Robert L. Stern *et al.*, Supreme Court Practice 320 (8th ed. 2002)).   In other words, the

definition he seizes upon has nothing to do with the unanimous Eleventh Circuit opinion affirming his conviction. *See United States v. Willie Lovett*, No. 15-10707 (11th Cir.) (reflecting full briefing schedule and oral argument held prior to the issuance of a unanimous opinion affirming his conviction on all grounds).

In practice, *per curiam* opinions are normal and, in this case, weigh even more heavily *against* finding any exceptional circumstance overcoming the procedural bar against relitigating claims already decided by the Court of Appeals.  Here, the Eleventh Circuit panel faced these exact same arguments and affirmed Lovett's conviction both unambiguously and unanimously.   It is unclear what possible "exceptional circumstance" or "fundamental defect which inherently results in a complete miscarriage of justice" Lovett believes results from this Court's application of the well-settled procedural bar to re-evaluating claims already presented to and ruled upon on the merits by the Court of Appeals.  Doc. 254 at 5; *Stoufflet*, 757 F.3d at 1239; *Nyhuis*, 211 F.3d at 1343; *Mills*, 36 F.3d at 1056; *Rowan*, 663 F.2d at 1035.

Lovett also renews his argument that changes to U.S.S.G. § 2C1.1 in November 2015 ("Amendment 791") touches his sentence, apparently

believing that the amendment provides "new information" or an "exceptional circumstance" which would permit the Court to review the six-level enhancement already affirmed by the Eleventh Circuit. *See* doc. 254 at 9; Amendment 791, *Amendments to the Sentencing Guidelines*, *available at* https://guidelines.ussc.gov/ac/791 (explaining that the guidelines were amended to account for "inflation," and that § 2C1.1 (among other sections) had been adjusted to "conform" to the "inflationary adjustments" made to "the monetary tables" of Section 2). But that amendment is not retroactive. *See* U.S.S.G. § 1B1.10(d) (listing those amendments with retroactive effect to reduce a defendant's term of imprisonment; Amendment 791 is *not* listed); U.S.S.G. § 1B1.10, comment. (n.1(A) ("Eligibility for consideration [for a sentence reduction] is triggered *only* by an amendment listed in subsection (d) that lowers the applicable guideline range.") (emphasis added)).  Indeed, the Commission specified that the "effective date" of the Amendment was November 1, 2015 -- *not* any time prior.  *See* Amendment 791. Nothing about Lovett's sentence, which was handed down seven months before the November 1, 2015 effective date, is changed by the

amendment. This Court is procedurally barred from considering his challenge to the six-level sentencing enhancement.

## B.    The IFRP Claim

The Court also explained in its screening order that Lovett had no § 2255 claim for the repayment of his special assessment. Doc. 252 at 3-4 (noting that it was unclear he was even a participant in the Bureau of Prison's Inmate Financial Responsibility Program (IFRP),[2] and that regardless, "[t]he Court ordered the terms of his payments, not that he participate in the program to develop a repayment plan with the Bureau's help.") (footnote added). Lovett contends that the Court "misconstrue[d]" his complaint, doc. 254 at 7, explaining that because the Court's order directing his repayments sounds an awful lot like the Bureau of Prison's IFRP "rhethoric" it must be an improper order for him to participate in the IFRP. *Id.* at 8; *see* doc. 193 at 6 (judgment

---

[2]    According to the Code of Federal Regulations, the [IFRP] was created to encourage "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. The regulations provide that, when an inmate has a financial obligation, including the special assessment imposed at sentencing, Bureau staff "shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. . . . The IFRP is a voluntary program, but there are several consequences for not participating in it. *See* 28 C.F.R. § 545.11(d).

*United States v. Warmus*, 151 F. App'x 783, 786 (11th Cir. 2005).

imposing $660 assessment and $50,000 fine); doc. 220 at 30-31 (sentencing transcript, detailing the Court's order that Lovett pay his fine in quarterly installments while in custody for 90 months, and monthly installments while on supervised release for an additional 47 months). But just because the terms of his payments as ordered by the Court sound similar to the Bureau's payment plan suggestions does not make them the same thing. And arguing that the Court "erred" in ordering something it never ordered doesn't render his sentence unconstitutional.

Regardless, 28 U.S.C. § 2255 is a vehicle to vacate, set aside, or correct a federal sentence. It requires a demand for release from custody. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) ("The plain language of § 2255 provides only prisoners who claim a right to be released from custody an avenue to challenge their sentences."). Even if it had meat to it (*i.e.*, that Lovett is being unfairly pressed into involuntarily repayment planning sessions by the Bureau of Prisons), to the extent movant actually disputes the way his sentence is being executed, that challenge is not the stuff of a § 2255 motion. *See Warmus*, 151 F. App'x at 786 ("to the extent that [movant] is challenging the

manner in which the Bureau is collecting the special assessment, that claim is properly brought under 28 U.S.C. § 2241," not § 2255).   But Lovett maintains that he "is not questioning 'his fine or the terms by which it is to be paid.'  His argument persists that this court erred with an IFRP instruction which mandates resentencing."  Doc. 254 at 7.  But the record is clear that the Court gave no such instruction.  This claim is contradicted by the record and provides no grounds on which to abrogate his sentence.

### C.    Ineffective Assistance of Counsel on the *Batson* Claim

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance."  *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence."  *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001).  To demonstrate prejudice, the prisoner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").  In other words, mere dissatisfaction with counsel's performance is not enough.

At the conclusion of jury selection, after the Government had used five of its seven strikes to remove African-Americans from the jury pool, defense counsel raised a *Batson* challenge.  Doc. 218 at 71.  He argued that the mere number of black jurors struck demonstrated an impermissible race-based motive.  *Id.*  The Government argued, and the Court agreed, that numbers alone could not prove a *prima facie* case under *Batson*, *see* 476 U.S. at 97 (noting only that "a 'pattern' of strikes against black jurors in the particular venire *might* give rise to an inference of discrimination." (emphasis added)), and counsel was unable to muster any alternative reasoning to support his motion.  *Id*. at 72-74.

Counsel re-raised the argument in a post-verdict motion for a new trial (doc. 184), which the Court summarily denied (doc. 186). *See United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) ("In making out a *prima facie* case, the defendant must point to more than the bare fact of the removal of certain venire persons and the absence of an obvious valid reason for the removal."). On appeal, counsel made the same numbers-based argument, which was again rejected. *Lovett*, 662 F. App'x at 844-48; *see id.* at 847 ("Our precedent requires something beyond the number of jurors struck to establish a *prima facie* case."). Movant now argues that counsel's failure to better argue his *Batson* challenge provides grounds to vacate the judgment entered against him. Doc. 251 at 28-35 (arguing that the "Government's discriminatory intent during jury selection" should be inferred from the record, and that counsel was ineffective for failing to better present the argument on appeal). Indeed, he has maladroitly seized on the Court of Appeal's citation to the two examples given by the *Batson* court that may support an inference of discrimination: (1) engaging in a "pattern" of strikes against venire members of one race, and (2) questions or statements

during *voir dire* or in exercising challenges that suggest a discriminatory purpose. *Lovett*, 662 F. App'x at 847-48; *see Batson*, 476 U.S. at 97.

Lovett first contends counsel failed to expose former AUSA Jim Durham's career "pattern" of striking African American jurors. Doc. 251 at 32-34 (arguing that had counsel undertaken the proper investigation he "might have discovered that Mr. Durham has an established 'pattern' in all his trials of 'striking' African-American venire members."). But aside from Lovett's bare speculation that such a pattern exists and that (had it been proven) it would have helped him, he points to nothing in this record (or any other) supporting his allegation. *See e.g.*, *id*. at 33-35 (because "'[p]attern' alone *might* have satisfied the first [*Batson*] requirement" . . . "[h]ad counsel pursued this issue to the fullest, clearly the results *could* have been different, to where this entire legal proceeding *could* have been declared a mistrial." (emphases added)). And, even had counsel speculated that such a pattern existed (it didn't), counsel cannot be deficient for failing to follow a hypothetical, meritless white rabbit. *See* doc. 255 at 3-4 (Government's representation that no such pattern exists; former AUSA Jim Durham was only involved in one case involving a *Batson* challenge -- this one))*; Wilkerson v. United*

*States*, 591 F.2d 1046, 1047 (5th Cir. 1979) ("Under the circumstances, counsel may rightly have concluded that his time was better spent in legal research than in fruitless legwork.").

Movant then contends that counsel failed to point to "relevant circumstances" underscoring the Government's animus, including "the questions or statements [by the Government] during *voir dire* to those venire members . . . [which] support the inference of the[ir] discriminatory purpose." Doc. 251 at 34. But, as unambiguously explained by the Eleventh Circuit, "none of the prosecutor's comments during *voir dire* suggest a discriminatory purpose." *Lovett*, 662 F. App'x at 847. Indeed, Lovett doesn't single out any specific question or statement as an example, resting instead on his conclusion that they both exist and are inherently discriminatory. Doc. 251 at 34. But conclusory allegations support no § 2255 relief. *Stanton v. United States*, 2017 WL 977504 at *6 (S.D. Ga. Jan. 9, 2017) (movants "cannot simply 'laundry list' conceived claims without explaining, with full

citation to the record, how they were viable *and* that no reasonable lawyer would have missed them.").[3]

Lovett also argues that "the subject matter of the case" itself provided evidence of discriminatory intent that counsel should have presented to the Eleventh Circuit.  Doc. 251 at 34 (explaining that "the prosecution wanted this highly profiled conviction" and, thus, somehow, was willing to discriminate to get it).  But movant does not refute that "the underlying case -- one involving extortion and gambling crimes -- is not overtly racial in nature such that it would suggest a motive for discriminatory use of peremptory strikes."  *Lovett*, 662 F. App'x at 847; *United States v. Hill*, 643 F.3d 807, 840 (11th Cir. 2001) (while defendant's race can definitely be a "highly relevant" circumstance in jury strikes, "[h]ere, by contrast, the subject matter of the case is not the

---

[3]   "Laundry list" claims of deficient representation -- offered without explaining, with full citation to the record, how they were viable *and* that no reasonable lawyer would have missed them -- do not an IAC claim make.  A typical IAC claim succeeds only where counsel has, metaphorically speaking, shot at the side of a barn yet missed.  *See Sullivan v. Secretary, Fla. Dep't. of Corr.*, 837 F.3d 1195, 1205 (11th Cir. 2016) (an attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance, as element of ineffective assistance of counsel); *see also id.* at 1206 (in prosecution for fleeing and attempting to elude a law enforcement officer, trial counsel was ineffective in presenting a voluntary intoxication defense long after it had been statutorily abolished, instead of advising defendant to accept state's pretrial plea offer).

least bit racial. . . . The only relevant color is the color of money, and that shade of green is race neutral."). Lovett again offers nothing but speculation, after having some time to stew on his case, that things would have turned out different had counsel just been a bit more creative in what he argued to the Eleventh Circuit.

Too, his throwaway argument that Durham had "little regard" for him (doc. 251 at 35) -- as evidenced by the prosecutor's statements *at sentencing* (*i.e.*, *after* the trial was over) -- does nothing for his cause. *See* doc. 220 (sentencing hearing transcript) at 16 (arguing, in support of an obstruction enhancement under the Sentencing Guidelines, that "there were countless times that [movant] just didn't tell the truth, . . . lie after lie after lie."). It is unclear how this statement, *even if* it showed "little regard" for movant, could in any way have supported counsel's *Batson* argument to the Court of Appeals. Lovett certainly doesn't offer any explanation. *See* doc. 251 at 35 (concluding, without explication, that the statement demonstrates former AUSA Durham's unwillingness to "risk having an 'improbable' venire member seated on the jury"). And mere conclusions don't garner § 2255 relief. *Stanton*, 2017 WL 977504 at *6.

As explained by the Eleventh Circuit, "the fact that a party has struck only members of a single race is, by itself, insufficient as a matter of law to establish a *prima facie* case of discrimination." *Lovett*, 662 F. App'x at 844-45.  Indeed, the fact that two black jurors *remained* on the jury undercuts Lovett's charge of discrimination.  *Hill*, 643 F.3d 807, 839 (no *prima facie* showing where the government could have, and did not, use all of its available strikes to remove as many black jurors as it could); *United States v. Campa*, 529 F.3d 980, 989 (11th Cir. 2008) (a *prima facie* case is not established where "the government did not attempt to exclude as many black persons as it could from the jury"); *Cent. Alabama Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 636-37 (11th Cir. 2000) ("the unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a *prima facie* case of discrimination in the peremptory striking of jurors of that race."); *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African-American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim."); *United States v. Allison*, 908 F.2d 1531, 1537 (11th Cir. 1990) (the unchallenged presence of blacks jurors undercuts

the inference of impermissible discrimination that might arise solely from striking other black prospective jurors).

A *prima facie* case of discrimination requires more than statistics, but that was all counsel had to work with.  Though Lovett contends counsel could have, and ought to have, done better, he offers little more than speculation that counsel could have mustered such arguments, and nothing more than hope that they would have been meritorious.  Counsel made the best argument he had -- that discrimination could be inferred because "the government used a significant number of its peremptory challenges to strike a portion of the African-American panel members, resulting in a disparity between the percentage of African-American jurors on the venire (22%) and the percentage of their representation on the jury (14%)," *Lovett*, 662 F. App'x at 848 -- and lost.  The mere failure to win an uphill battle does not render counsel deficient.  Lovett must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Matire*, 811 F.2d at 1434; *Butcher*, 368 F.3d at 1293.  He has not met his burden.

## II.   CONCLUSION

Accordingly, Willie Lovett's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either.   28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2254 ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this   23rd   day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA